UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
DR. ALLAN POLLOCK,

       Plaintiff,                                  <u>Memorandum and Order</u>
    -against-                                     CV-03-4881(ILG)(JMA)

TRUSTMARK INSURANCE COMPANY,

       Defendant.
------------------------------------------------------------X
A P P E A R A N C E S:

Harold J. Levy, Esq.
Quadrino & Schwartz, P.C.
666 Old Country Road - Ninth Floor
Garden City, NY 11530
Attorney for Plaintiff

Steven P. Del Mauro, Esq.
McElroy, Deutsch, Mulvaney & Carpenter, LLP
88 Pine Street, 24th Floor
New York, NY 10005
Attorney for Defendant

AZRACK, United States Magistrate Judge:

      By Order of April 4, 2005, the above captioned action was referred to me by the Honorable I. Leo Glasser to decide defendant Trustmark Insurance Company's motion to enforce a settlement agreement and plaintiff Dr. Allan Pollock's cross-motion for remand. Because I find that the court lacks subject matter jurisdiction over this action, it is hereby remanded to state court.

## I. BACKGROUND

      Plaintiff is the beneficiary of a disability insurance policy established with defendant. Plaintiff applied for benefits under the policy in March 1999, and defendant began making payments under the

policy that same year. Defendant ceased making payments after one dated October 27, 2002 and received November 5, 2002 (the "October 2002 payment"). Plaintiff brought a suit in Kings County Supreme Court on August 5, 2003, alleging that, by ceasing payments, defendant had breached its contract with plaintiff. Plaintiff also alleged that by this same conduct, defendant had engaged in improper business activities, a violation of Article 22-a of the New York General Business Law. See N.Y. Gen. Bus. Law § 349 (McKinney 2005).

On September 23, 2003, defendant filed notice of removal of the case to federal court. Defendant's notice demonstrated diversity of citizenship under 28 U.S.C. § 1332 (2005); plaintiff is a New York doctor, defendant an Illinois corporation. To establish the amount in controversy, defendant asserted that plaintiff's complaint

> alleges that on or about July 17, 2000 Trustmark denied [plaintiff's] claim for benefits due to a total disability. Dr. Pollock seeks damages representing benefits due under the policy of disability income insurance for the period commencing on or about July 17, 2000 to the date of final judgment. The policy of disability income insurance provides a monthly benefit due to total disability in the amount of $5,000.00. Therefore, at the time of filing of the verified complaint and this removal petition, the amount in controversy between the parties far exceeds $75,000.00, exclusive of interests and costs.

Defendant's Notice of Removal at 3.

On May 26, 2004, plaintiff informed defendant that it was interested in settling the lawsuit. See Exhibit F to Defendant's Motion to Enforce Settlement Agreement. Receiving no response, plaintiff sent a letter to the court dated July 8, 2004. This letter informed me of plaintiff's interest in settlement and defendant's lack of response. See Exhibit G to Defendant's Motion to Enforce Settlement Agreement. Defendant then decided to settle the action, and plaintiff sent a letter to the court, dated

2

July 22, 2004, informing me that plaintiff "had heard from counsel for Trustmark Insurance and they have agreed that the [case] should be discontinued without costs to all sides." See Exhibit H to Defendant's Motion to Enforce Settlement Agreement.

After the July 22, 2004 letter nothing happened in this litigation until November 2004, when defendant sent a settlement agreement to plaintiff to be signed and executed. Plaintiff retained new counsel and plaintiff's new counsel informed defendant that there was no agreement to settle the action. Defendant thereafter moved this court to enforce the terms of the settlement. Plaintiff opposed the motion and cross-moved for remand to state court, alleging that the amount in controversy at the time of the complaint was less than $75,000 and therefore the court has no jurisdiction. Plaintiff provides documentation that July 17, 2000 was not the last date of payment from defendant, as defendant's notice of removal had asserted. July 17, 2000 instead reflects the last payment under a separate insurance policy issued by a different insurance company. Plaintiff's documentation shows the last payment from defendant was the October 2002 payment.[1] See Exhibit A to Plaintiff's Cross-Motion. Plaintiff's calculations demonstrate that at $5,000 a month, the amount due by the time of the verified complaint in August 2003 would be approximately $45,000, depending on when payments were due and paid under the plan.

Defendant opposes plaintiff's cross-motion, arguing that i) because no dollar amount is given in

---

[1] This date does not appear to be in dispute anymore, if at any time it was. Defendant's opposition papers to plaintiff's cross motion, in a discussion of the amount in controversy, utilize October 2002 as the starting point for calculating damages. See Defendant's Reply Memorandum in Opposition at 8 ("Notwithstanding [plaintiff's failure to request discovery toward a determination of a dollar figure that might compensate plaintiff], the amount required to make plaintiff whole exceeds $75,000 as plaintiff has not received $5,000 a month since October 2002").

plaintiff's complaint, a presumption exists that the amount in controversy requirement is met; ii) even if $45,000 represents payments due at the time the complaint was filed and at the date removal was noticed, the New York statute plaintiff sued under allows recovery of attorney's fees, and therefore more than $75,000 is in controversy; iii) damages continuing to accrue can be included in a calculation of the amount in controversy in this situation; and iv) plaintiff's two causes of action can be aggregated to reach the amount in controversy. I address these arguments in a discussion of the amount in controversy requirement for subject matter jurisdiction.[2]

## II. DISCUSSION

Federal district courts are courts of limited jurisdiction. Thus, a court may examine subject matter jurisdiction at any stage of a proceeding and must dismiss the case if subject matter jurisdiction is lacking. Nwanze v. Time, Inc., No. 03-7135, 2005 U.S. App. LEXIS 4025, *3-*4 (2d Cir. Mar. 9, 2005) (citations omitted). Under 28 U.S.C. § 1332(a), a federal court has jurisdiction over the subject matter of a civil action where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between citizens of different states.[3] The "party invoking the jurisdiction of the federal court has the burden of proving that it appears to a reasonable probability that the claim is in excess of the statutory jurisdictional amount." Scherer v. The Equitable Life Assurance Soc'y of the United States, 347 F.3d 394, 398 (2d Cir. 2003). Courts recognize a rebuttable presumption that the

---

[2] Because I find that the court has no jurisdiction, I do not address the parties' arguments regarding the existence of a settlement agreement.

[3] For the purposes of this opinion, I accept that there is complete diversity between the parties.

face of the complaint is a good-faith representation of the "actual amount in controversy," and "to overcome the face-of-the-complaint presumption, the party opposing jurisdiction must show to a legal certainty that the amount recoverable does not meet the jurisdictional threshold." Id. (internal quotation marks and citations omitted). The amount in controversy is measured as of the date of the complaint, and once jurisdiction has attached, it cannot be ousted by subsequent events. Id. (citations omitted).

When no amount is alleged in the complaint, or an action filed in state court is removed to federal court, it is the burden of the party seeking the court's jurisdiction to establish by a reasonable probability that the amount is over the threshold. See United Food & Comm. Workers Union, Local 919, AFL-CIO v. Centermark Properties Meriden Square, Inc., 30 F.3d 298, 301 (2d Cir. 1994) ("Where, as here, jurisdiction is asserted by a defendant in a removal petition, it follows that the defendant has the burden of establishing that removal is proper"). In other words, when an action is removed to federal court, the presumption remains that the complaint is a good-faith representation of the actual amount in controversy, but any presumption that the jurisdictional amount is satisfied which attaches to a federal complaint, is lost. While the Second Circuit normally requires the party contesting the amount in controversy establish to a "legal certainty" that the jurisdictional amount has not been met, see Nwanze, 2005 U.S. App. LEXIS 4025, at *5, the language of legal certainty is dropped when an action is removed to federal court. A defendant removing a case to federal court encounters instead the general principle that removal is disfavored and remand favored. See Lupo v. Human Affairs, Int'l, Inc., 28 F.3d 269, 274 (2d Cir. 1994) ("The right to remove a state court action to federal court on diversity grounds is statutory, and must therefore be invoked in strict conformity with statutory requirements. In light of the congressional intent to restrict federal court jurisdiction, as well as the

5

importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability") (citations omitted); see also California Pub. Employees Ret. Sys. v. Worldcom, Inc., 368 F.3d 86, 100 (2d Cir. 2004).

Where there is no dollar amount alleged in the complaint and the action is in federal court by a notice of removal, a reasonable probability that the jurisdictional amount is met can be established by competent evidence from other sources. See Mehlenbacher v. Akzo Nobel Salt, Inc., 216 F.3d 291, 296 (2d Cir. 2000) ("To determine whether that burden has been met, we look first to the plaintiff['s] complaint and then to [defendant's] petition for removal"). The court looks first to the complaint, and then to moving papers, and then to anything else. See United Food, 30 F.3d at 305 ("Where the pleadings themselves are inconclusive as to the amount in controversy, however, federal courts may look outside those pleadings to other evidence in the record").

The starting point for determining the amount in controversy is the type of relief requested. When a plaintiff is seeking damages for a breach of contract, as here, the amount in controversy depends on the amount recoverable under contract law. In a breach of contract action in New York, the measure of damages is compensatory, that which the plaintiff needs to be made whole. See, e.g., Scalp & Blade, Inc. v. Advest, Inc., 309 A.D.2d 219, 765 N.Y.S.2d 92, 97 (4th Dept. 2003) ("While the precise measure of damages may vary under each [of several damages theories], there can be no doubt that, under all of them, the object of compensatory damages is the same, i.e., to make the plaintiff whole") (internal quotation marks and citations omitted). Here, the amount that will make plaintiff whole is the sum total of contractual payments he was owed at the time his suit was removed to federal

court, or $55,000.[4]  Additionally, while plaintiff requests damages, and can apparently establish damages of $55,000, he also requests an award of attorney's fees as partial relief for defendant's alleged violation of the New York statute.  No dollar figure is requested for attorney's fees, but to reach the jurisdictional amount fees would have to be $20,000.  Such fees would be unreasonable for this action and would not be awarded.  Defendant thus cannot establish a reasonable probability that the amount in controversy exceeds $75,000, and this action must therefore be remanded.

I reject defendant's contention that because plaintiff's complaint does not allege a dollar figure, a presumption exists that the amount in controversy requirement is met.  That presumption only attaches to complaints originally filed in federal court, and not to actions removed to federal court by the adverse

---

[4] I count nine months from November 2002 to August 2003, the date the complaint was filed. The starting point for damages is therefore $45,000 (nine months at $5,000 per month).  There is, however, authority for the proposition that the amount in controversy in a removal situation should be measured as of the date of the notice of removal.  Compare Scherer, 347 F.3d at 348 (in action brought in federal court, amount in controversy measured as of the date of the complaint), with Torah Soft, Ltd. v. Drosnin, No. 00 Civ. 0676, 2003 U.S. Dist. LEXIS 15584, *4 (S.D.N.Y. Sept. 8, 2003) (("In determining whether an action should be remanded, a court should refer to the complaint at the time the petition for removal was filed") quoting Grace v. Corp. of Lloyd's, No. 96 Civ. 8334, 1997 U.S. Dist. LEXIS 14994, *8 (S.D.N.Y. Oct. 2, 1997)).  In many situations it will not matter, given that notice of removal must be filed within 30 days of service on the adverse party to the lawsuit.  See 28 U.S.C. § 1446(b) (2005).  This is one of those situations.

Here, the complaint was filed in state court on August 5, 2003.  Defendant was served on August 29, 2003.  See Exhibit A to Defendant's Motion to Enforce the Settlement Agreement. Defendant's notice of removal was filed September 23, 2003.  Almost two more full payments accrued between plaintiff's filing in state court and defendant's filing in federal court, bringing the accrued payments to roughly $55,000 as of the date of the removal notice.  I do not take a position on whether the jurisdictional amount should be calculated as of the date of the complaint or as of the date of the removal notice, because in this case the larger number still does not reach the jurisdictional amount. For clarity I use $55,000, the amount pled in the complaint as of the date of removal, as the measure of plaintiff's contract damages.

7

party.  Plaintiff's state court complaint contains an averment that the breach of contract "has resulted in damages that exceed all lower court jurisdictions."  See Complaint ¶ 16.  If anything, this establishes a presumption that the amount in controversy exceeds only the New York City Civil Court jurisdictional limit of $25,000 (enabling plaintiff access to New York State Supreme Court).  See Simmons v. Simmons, 2 Misc. 3d 536, 538, 769 N.Y.S.2d 711, 713 (Sup. Ct. Queens County 2003), citing N.Y. City Civ. Ct. Act § 202 (Gould 2005).

Attorney's fees can be considered as part of the amount in controversy where they are anticipated or awarded in the governing statute.  "Under the general rule in New York, attorneys' fees are the ordinary incidents of litigation and may not be awarded to the prevailing party unless authorized by agreement between the parties, statute, or court rule."  Oscar Gruss & Son, Inc. v. Hollander, 337 F.3d 186, 199 (2d Cir. 2003).  So as to the common law breach of contract claim, attorney's fees cannot be added in a calculation of the amount in controversy.  Plaintiff's second claim, under the New York statute, however, explicitly contemplates an award of attorney's fees:

> [A]ny person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions.  The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

N.Y. Gen. Bus. Law. § 349(h).  Thus, attorney's fees may be considered in a calculation of the amount in controversy with respect to defendant's alleged violation of the New York statute.[5]

---

[5] The statute contemplates an award of up to $1,000 for a litigant's willful or knowing violation. See N.Y. Gen. Bus. Law § 349(h).  Adding $1,000 to the potential $55,000 contract damages

Defendant argues that the court can look to continuing damages to establish the jurisdictional amount. Defendant contends that this is so where a party's right to future payments is determined in the present suit. See Broglie v. MacKay-Smith, 541 F.2d 453, 455 (4th Cir. 1976). This, however, is not the law in New York. "Generally, an insured who sues its insurer for failure to pay benefits under a policy may only recover benefits that have already accrued." Wurm v. Comm. Ins. Co. of Newark, New Jersey, 308 A.D.2d 324, 327, 766 N.Y.S.2d 8, 12 (1 Dept. 2003). And as above, the amount in controversy is established as of the date of the complaint (or of the notice of removal) and "is not reevaluated based on post-filing events." Hall v. Earthlink Network, Inc., 396 F.3d 500, 507 (2d Cir. 2005) (stating the general rule and recognizing an exception where the amount alleged in the complaint was made in bad faith); see also Torah Soft, Ltd. v. Drosnin, No. 00 Civ. 0676, 2003 U.S. Dist. LEXIS 15584, *4 (S.D.N.Y. Sept. 8, 2003). Thus, benefit payments which accumulate during the pendency of the action do not affect the amount in controversy as of the date of the notice of removal.

New York's rule that an insured can only recover payments accrued as of the date of the complaint is not absolute, however.

[T]here is a narrow exception to this rule which provides for recovery of future benefits

---

amounts to $56,000 plus attorney's fees. More than $19,000 in attorney's fees for this action would not be reasonable and would not be awarded.

I note that while this statute authorizes a party to bring an action for both damages and injunctive relief to enjoin alleged "unlawful act[s] or practice[s]," N.Y. Gen. Bus. Law. § 349(h), plaintiff in this case sued only for damages. See Complaint ¶ 19-21 ("[D]efendant engaged in improper business activities. [A]s a result . . . of such improper business activities, defendant violated [the statute]. [P]laintiff . . . is entitled to damages as set forth in [the statute], inclusive of counsel fees").

9

> where the insurer has repudiated the entire policy. This exception is applicable only where a plaintiff establishes that the insurer has committed an anticipatory breach by 'disclaim[ing] the intention or the duty to shape its conduct in accordance with the provisions of the contract.'

Wurm, 308 A.D.2d at 327-28, 766 N.Y.S.2d at 12, quoting New York Life Ins. Co. v. Viglas, 297 U.S. 672, 676 (1936). Plaintiff here does not try to establish anticipatory breach. Defendant's refusal to make installment payments by itself does not demonstrate repudiation. See Brauner v. Provident Life & Casualty Ins. Co., 97-CV-3556, 1998 U.S. Dist. LEXIS 23042, *5 (S.D.N.Y. Mar. 24, 1998). The right to future payments is not being adjudicated in this action and it is therefore improper to consider them in calculating the amount in controversy. Looking to future payments to establish the amount in controversy might be appropriate in an action for equitable relief. "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." Correspondent Serv. Corp. v. JVW Inv., Ltd., No. 99 Civ. 8934, 2004 U.S. Dist. LEXIS 19341, *21 (S.D.N.Y. Sept. 30, 2004), quoting Hunt v. Washington State Apple Adver. Comm'n, 432 U.S. 333, 347 (1977). For example, "where a plaintiff seeks a declaration as to the ownership of personal property, the object of the litigation is the property at stake, and the value of that property dictates the amount in controversy." Id. at *25 (citations omitted). Defendant cites a Second Circuit case which recognized that the amount in controversy "is not necessarily the money judgment sought or recovered, but rather the value of the consequences which may result from the litigation." Beacon Constr. Co., Inc. v. Matco Elec. Co., 521 F.2d 392, 399 (2d Cir. 1975). The litigation in Beacon, however, concerned requested declaratory relief, specifically, a determination that a lien on a bond was void. Id.

This action, on the other hand, is for breach of contract. See Complaint at ¶ 13, 15 ("[D]efendant [] breach[ed] the policy provisions under the [] policy by failing to pay disability payments to plaintiff. . . . [A]s a result . . . of the defendant's breach under the terms of the policy, plaintiff has been economically damaged in that he has not received the sums agreed to be paid to the plaintiff by the defendant").[6] New York law is explicit that the damages recoverable for a breach of contract are those necessary to compensate a plaintiff for the defendant's breach. See Lucente v. Int'l. Bus. Mach. Corp., 310 F.3d 243, 262 (2d Cir. 2002) ("damages for breach of contract should put the plaintiff in the same economic position he would have been in had the defendant fulfilled the contract"); see also Menzel v. List, 24 N.Y.2d 91, 97, 298 N.Y.S.2d 979, 983 (1969) (defining compensatory damages as those that "will put [the plaintiff] in as good a position as he would have occupied had the contract been kept"). In sum, it is inappropriate to consider continuing damages in the calculation of the jurisdictional amount because defendant has not repudiated the contract. Likewise, it is inappropriate to consider in the calculation the full value of the insurance policy at issue in this case because this is not an action for declaratory relief. As an action for damages on a breach of contract, this litigation is over the unpaid installments as of the date of the removal notice, and it is these unpaid installments, with the possible addition of attorney's fees and penalties under the statutory claim, which make up the amount in controversy.

Defendant's last argument is that plaintiff's claims can be aggregated to reach the jurisdictional

---

[6] There is boilerplate language in the complaint that requests "such other and further relief as this court may deem just and proper." See Complaint's Request for Relief. This language does not transform a breach of contract action into one for declaratory relief.

amount. It is true that in a single-plaintiff, single-defendant action, the plaintiff's claims can be aggregated to establish the jurisdictional amount. See 15 Moore's Federal Practice § 102.108(1) (3d ed. 2004), citing Airlines Reporting Corp. v. S and N Travel, Inc., 857 F. Supp 1043, 1049 (E.D.N.Y. 1995) (single plaintiff can aggregate all claims, joined under Rule 18(a) of the Federal Rules of Civil Procedure, and related or unrelated, against a single defendant in calculating the amount in controversy); see also Fed. R. Civ. P. 18(a). "Since the diversity statute confers jurisdictions over 'civil actions' rather than specific claims alleged in a complaint, a plaintiff is permitted to aggregate claims in order to satisfy the amount in controversy requirement." Wolde-Meskel v. Vocational Instruction Project Community Srvs, Inc., 166 F.3d 59, 62 (2d Cir. 1999); see also 28 U.S.C. § 1332(a). This opinion reflects these principles. I have aggregated the unpaid installments due at the commencement of the action with the fees and penalties contemplated in the statute. The claims just do not exceed $75,000.

Plaintiff has two separate "claims" against defendant in some sense of the word. Indeed, we speak of the claims as plaintiff's first claim and his second claim. Understood in this way, aggregating the two damages claims ($55,000 each) amounts to $110,000; with the addition of reasonable attorney's fees and the possible statutory penalty of $1,000, the dollar figure is obviously over $75,000. Aggregation, however, does not allow for this result.

Courts routinely note that all the related and unrelated claims a single plaintiff has against a single defendant may be aggregated to reach the jurisdictional amount. See, e.g., Deajess Med. Imaging, P.C. v. Geico Gen. Ins. Co., No. 03 Civ. 7388, 2004 U.S. Dist. LEXIS 13164, *5 (S.D.N.Y. July 16, 2004). Such a statement usually marks the starting point of a discussion of

aggregation of the claims of multiple plaintiffs. Id. Cases which allow aggregation of claims against a defendant do so in the way I have done: claims under separate categories of recovery to which a plaintiff is entitled, compensatory, incidental, or punitive, for example, may be aggregated. See Klepper v. First American Bank, 916 F.2d 337, 341 (6th Cir. 1990) (aggregating compensatory, punitive, and incidental damages as well as attorney's fees to reach the jurisdictional amount); see also Hall v. Earthlink Network, Inc., 396 F.3d at 507-8 (recognizing validity of aggregation of claims of actual and consequential damages, breach of implied covenant of fair dealing, and negligent appropriation). No case, however, allows the aggregation of claims which seek the same damages in claims under varying theories, such as here. Plaintiff, if he wins this case, is simply not going to recover $110,000 plus attorney's fees. He cannot, and that is because he has only one claim, for the unpaid installments as of the date of removal. Plaintiff has two theories of recovery for one award of damages, not two separate claims.

## III. CONCLUSION

In sum, defendant has not established to a reasonable probability that the amount in controversy exceeds $75,000. The court therefore does not have subject matter jurisdiction over this action, and it is hereby remanded to state court.

SO ORDERED.

Dated: Brooklyn, New York
April 27, 2005

__/s/_____
JOAN M. AZRACK
UNITED STATES MAGISTRATE JUDGE